SONYA D. WINNER (Bar No. 200348)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: swinner@cov.com

EMILY JOHNSON HENN (Bar No. 269482)
KATHRYN E. CAHOY (Bar No. 298777)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065-1418
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

*Attorneys for Defendants Viacom Inc. and Viacom International Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

AMANDA RUSHING, and her child, L.L., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VIACOM INC.; VIACOM INTERNATIONAL INC.; UPSIGHT, INC.; and UNITY TECHNOLOGIES SF,

Defendants.

Civil Case No.: 3:17-cv-4492-JD

**REPLY MEMORANDUM OF DEFENDANTS VIACOM INC. AND VIACOM INTERNATIONAL INC. IN SUPPORT OF THEIR MOTION TO STAY PENDING ARBITRATION**

Date: February 1, 2018
Time: 10 a.m.
Courtroom: 11
Judge: Hon. James Donato

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Do Not Dispute Viacom's Evidence That Rushing Had Actual Knowledge of the Arbitration Provision. ..... 2

B. Even Had There Not Been Actual Notice, Rushing Was on Constructive Notice of the Arbitration Provision. ..... 6

C. Plaintiffs Do Not Dispute That the Arbitration Agreement Delegates Arbitrability Questions to the Arbitrator ..... 10

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ....................9

*Craig v. Brown & Root, Inc.*,
84 Cal. App. 4th 416 (2000) ....................5

*Doe v. Xytex Corp.*,
2016 WL 3902577 (N.D. Cal. July 19, 2016)....................2, 4, 8

*Golden Eagle Ins. Co. v. Foremost Ins. Co.*,
20 Cal. App. 4th 1372 (1993) ....................2

*Granfield v. NVIDIA Corp.*,
2012 WL 2847575 (N.D. Cal. July 11, 2012)....................8

*James v. Comcast Corp.*,
2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) ....................5

*McKee v. Audible, Inc.*,
2017 WL 4685039 (C.D. Cal. July 17, 2017)....................4, 6, 9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................4, 6, 10

*Mitchell v. U-Haul Co.*,
Case No. 16-cv-04674-JD, Dkt. No. 40 (N.D. Cal. May 23, 2017) ....................8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .................... *passim*

*Norcia v. Samsung Telecomm. Am., LLC*,
2014 WL 4652332 (N.D. Cal. Sept. 18, 2014) ....................4, 8, 9

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. Sept. 8, 2016) ....................9

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)....................2, 5

*Sheffer v. Samsung Telecomm. Am., LLC*,
2013 WL 7158343 (C.D. Cal. Dec. 16, 2013) ....................5

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)....................3

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal. App. 3d 987 (1972) ....................4

**Other Authorities**

*Mitchell v. U-Haul Co.*,
Case No. 16-cv-04674-JD, Dkt. No. 37-1 (N.D. Cal. Jan. 18, 2017) ....................4

*Nguyen v. Barnes & Noble, Inc.*,
Case No. 8:12-cv-812 JST, Dkt. No. 12-1 (C.D. Cal. June 26, 2012)....................3

## I. INTRODUCTION

Plaintiffs' opposition to Viacom's arbitration motion should be rejected for the simple reason that plaintiffs, who oppose arbitration solely on the ground of contract formation, have failed to present *any* evidence, including a declaration from plaintiff Rushing, to rebut Viacom's evidentiary showing that a contract was properly formed through (a) the concrete notice that Rushing actually received of the arbitration agreement and (b) her acceptance of the agreement through the download and use of Viacom's apps.

Plaintiffs' only ground for opposing this motion is their claim that no binding arbitration agreement was formed because, they argue, Viacom did not provide sufficient constructive notice of the End User License Agreement ("EULA") in which the arbitration agreement is found.  But *constructive* notice is irrelevant where, as here, a plaintiff has *actual* notice of the contract, and it is no accident that in the constructive notice cases on which plaintiffs rely, the parties resisting arbitration presented declarations from the plaintiffs that denied actual notice.  No such evidence has been presented here.  In light of Viacom's unrebutted evidence demonstrating that Rushing did receive actual notice, the Court should find that an arbitration agreement was formed.

Even if actual notice had not existed, the record is more than sufficient to show that Rushing had at least constructive notice of the contract and its arbitration clause.  In contrast to the cases on which plaintiffs rely, Viacom did not simply provide an inconspicuous link to its EULA.  In the app store description for *Llama Spit Spit* – which plaintiffs quoted in their complaint and do not dispute that Rushing viewed – Viacom explicitly warned that "[u]se of this app is subject to the Nickelodeon End User License Agreement" and that "[t]he End User License Agreement for this app includes arbitration for disputes."  Notice of the agreement and arbitration provision was provided through multiple other avenues as well.  The specificity of these notices sets this case apart from cases that have found that a buried link or vague reference to "terms of service" do not put users on constructive notice of the terms of a contract.

Plaintiffs' download and use of Viacom's apps after being provided with notice of the terms of the EULA constituted assent and bound them to the arbitration provision.  Plaintiffs do not dispute that

the arbitration provision delegates arbitrability decisions to the arbitrator.  Thus, nothing remains for the Court to resolve, and it should dismiss or stay the case pending arbitration.

## II.   ARGUMENT

### A.   Plaintiffs Do Not Dispute Viacom's Evidence That Rushing Had Actual Knowledge of the Arbitration Provision.

Although plaintiffs contest the existence of constructive notice, their Opposition fails to respond meaningfully to Viacom's showing that Rushing had *actual* notice of the arbitration provision in the EULA.  *See* Motion, Dkt. No. 66 ("Mot.") at 10-11.  The issue of constructive notice is relevant only if actual notice does not exist; so long as a party has actual notice, the hypothetical sufficiency of any constructive notice the same party also received is entirely moot.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004); *Doe v. Xytex Corp.*, 2016 WL 3902577, at *5 (N.D. Cal. July 19, 2016).

It is black-letter law – and plaintiffs do not dispute – that a party is deemed to have accepted the terms of a contract if it had actual notice of those terms and took the benefit of the contract.  *See Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1386 (1993) ("Acceptance of an offer may be inferred . . . from retention of the benefit offered."); *Register.com, Inc.*, 356 F.3d at 403 (calling this proposition "standard contract doctrine").[1]  It is also undisputed that plaintiffs accepted the benefit of the contract – the right to use Viacom's apps.  The *only* question before the Court is therefore whether plaintiffs – specifically Rushing, acting on behalf of herself and her child[2] – had notice of the contract.

Viacom's Motion presented ample evidence that Rushing received actual notice of the arbitration provision, and plaintiffs have failed to offer *any* evidence in response.  As Viacom explained in its opening memorandum, with a supporting declaration, the app description for *Llama Spit Spit* notifies users that "[u]se of this app is subject to the Nickelodeon End User License Agreement."  *See* Ortiz Dec., Dkt. No. 66-1, ¶¶ 8-10, 12 & Figs. 2 & 4.  That description also explicitly informs users that the

---

[1] As Viacom stated in its opening brief, the principles of contract formation discussed herein are generally accepted in both California and New York (the jurisdiction whose law the contract identifies as governing).  *See* Mot. at 8 n.8.  Plaintiffs do not appear to dispute this.

[2] Plaintiffs do not dispute that Rushing was legally empowered to bind her minor child as well as herself.  *See* Mot. at 7 n.7 (citing cases).

EULA contains an arbitration provision: "[t]he End User License Agreement for this app includes arbitration for disputes." *Id.* ¶¶ 9, 12 & Figs. 2 & 4. *Plaintiffs have offered no evidence to dispute that Rushing saw this language.* Nor could plaintiffs have reasonably disputed this, as they rely on a quote from the same section of the app description in their Complaint. *Id.* ¶¶ 11, 13 & Figs. 3 & 4; Complaint ¶ 43.

This alone would be sufficient to demonstrate actual notice. But Viacom has shown much more, demonstrating that Rushing would necessarily have received actual notice of the EULA in general – and of the arbitration provision specifically – in multiple other ways. For example, several of the apps that Rushing challenges in the complaint would not function until the user was confronted with and then clicked past a pop-up providing explicit notice both that there was a contract governing the app and that the contract had an arbitration provision. Ortiz Dec. ¶¶ 19-20 & Fig. 8. Once again, plaintiffs have offered no evidence, either through a declaration from Rushing or otherwise, disputing that Rushing actually viewed these notices.[3]

Plaintiffs' failure to submit a declaration or other evidence contesting actual notice of Viacom's arbitration provision is in stark contrast to the cases plaintiffs cite in which courts have had to reach the issue of constructive notice: the plaintiffs in each of those cases submitted declarations or sworn testimony denying that they had actual knowledge of the contracts. *See, e.g.*, *Nguyen*, 763 F.3d at 1174 (noting that plaintiff "neither clicked on the 'Terms of Use' hyperlink nor actually read the Terms of Use"); *Nguyen v. Barnes & Noble, Inc.*, Case No. 8:12-cv-812 JST, Dkt. No. 12-1 (C.D. Cal. June 26, 2012) (plaintiffs' declaration attesting that plaintiff had no actual notice of terms of service); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002) (noting that plaintiffs stated both in affidavits

[3] Plaintiffs' only effort to confront this notice evidence is through a bald assertion by her counsel in their Opposition memorandum that Rushing did not download any app other than *Llama Spit Spit.* Opp. at 1 n.1. But plaintiffs have offered no *evidence* to support this contention. And the complaint purports to bring claims relating to these other Viacom apps as well. *See* Complaint ¶¶ 35, 43 n.7, 45, 90, 97, & Ex. A. For current purposes, the Court may properly infer that plaintiffs had standing to bring these claims, which requires rejection of the new, unsupported assertion of plaintiffs' counsel that Rushing does not have a claim relating to the other apps after all.

and during depositions that they never saw the reference to the license agreement when downloading the product); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76-77 (2d Cir. 2017) (reaching constructive notice question because plaintiff "attest[ed] that he was not on actual notice of the hyperlink to the Terms of Service or the arbitration provision itself").[4]

The only evidence plaintiffs submitted with their Opposition is a declaration from their attorney that does not purport to address Viacom's showing of actual notice. Nor could it have done so, as a declaration from plaintiffs' *counsel* cannot take the place of first-hand testimony from the plaintiff herself on this subject. *See Xytex Corp.*, 2016 WL 3902577, at *5 (rejecting declaration from plaintiffs' counsel as evidence of whether the plaintiff had actual notice).[5]

Not surprisingly, plaintiffs' attorney declaration actually confirms several facts concerning the notice that Rushing received. *See, e.g.*, Pollock Dec., Dkt. No. 68-1, ¶ 10, hyperlink to "LSS Download Clip" at 0:31 (confirming that full app description states "[u]se of this app is subject to the Nickelodeon End User License Agreement"); *id.* at 0:35 (confirming that full app description states "[t]he End User License Agreement for this app includes arbitration for disputes"); Opposition, Dkt. No. 68 ("Opp."), at 2 (confirming that Complaint ¶ 43 contains language that appears only in the full app description that was displayed when plaintiffs clicked on "more" in the app store). The only *new* information this declaration purports to provide is a report that the attorney was unable to access the full content of the EULA through a hyperlink from *one* of the three app stores in which *Llama Spit Spit* is available. But

---

[4] *See also McKee v. Audible, Inc.*, 2017 WL 4685039, at *2 (C.D. Cal. July 17, 2017) (noting that plaintiff submitted declaration contending he had no actual notice that terms of service would apply); *Mitchell v. U-Haul Co.*, Case No. 16-cv-04674-JD, Dkt. No. 37-1 (N.D. Cal. Jan. 18, 2017) (declaration submitted by plaintiff regarding notice); *Norcia v. Samsung Telecomm. Am., LLC*, 2014 WL 4652332, at *5 (N.D. Cal. Sept. 18, 2014) (finding no actual notice when plaintiff testified "'that plaintiff was in fact unaware' of the arbitration provision"); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991, 994 (1972) (referencing and crediting declaration submitted by plaintiff's president, Petal, denying actual knowledge).

[5] In *Xytec*, Judge Alsup held that, due to the insufficiency of the plaintiff's evidence on actual notice, the defendant was entitled to conduct discovery of the plaintiff on that subject. *Id.* Here such discovery should be unnecessary, as Viacom already possesses, and has presented, sufficient evidence of actual notice to carry its initial burden. As that evidence is unrebutted, no further proceedings on the question should be needed. Should the Court find Viacom's evidence to be insufficient, however, it should similarly permit Viacom to take limited discovery on the notice issue.

plaintiffs have offered no evidence that this was the app store that Rushing actually used; nor does this declaration suggest that the web address provided in this or any other store was inaccurate or that the hyperlinks to the EULA in the other app stores did not work.  In any event, given the language of the app description, which she does not deny having reviewed, Rushing did not need to review the full content of the EULA in order to know that she would be agreeing to arbitration of any disputes if she downloaded and used the app.

Numerous courts have found actual notice – and a binding contract – to exist on facts similar to those presented here.  For example, a California court found mutual assent to the terms of a contract when defendants presented evidence that they notified plaintiffs of the contract terms and plaintiffs did not dispute that they received and read portions of them.  *See Sheffer v. Samsung Telecomm. Am., LLC*, 2013 WL 7158343, at *4 (C.D. Cal. Dec. 16, 2013), *final ruling issued in* 2014 WL 792124 (C.D. Cal. Feb. 6, 2014).  In another case, a court found the parties had agreed to arbitrate when the defendant presented evidence that it notified the plaintiff of the arbitration provision, the plaintiff did not provide evidence disputing receipt of the notice, and the plaintiff continued to use the product after receiving the notice.  *See James v. Comcast Corp.*, 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016).  In yet another case, the California Court of Appeal found an agreement to arbitrate when the defendant presented evidence that it sent the plaintiff a memorandum and brochure notifying her that a new dispute resolution program would govern her employment and she elected to continue her employment.  *See Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 419, 420-22 (2000); *see also Register.com*, 356 F.3d at 403 (holding that an "offeree [who] makes a decision to take the benefit with knowledge of the terms of the offer" accepts those terms, "which accordingly become binding on the offeree").

Similarly here, Rushing was told that the EULA would be binding upon use of the app and was expressly informed of the arbitration provision; plaintiffs have submitted no evidence disputing that she received and was aware of these notices.  Thus, Rushing's choice to proceed with download and use of *Llama Spit Spit* and other apps constituted acceptance of the arbitration agreement.

Plaintiffs' opposition disputes none of this; indeed, the opposition is almost entirely silent on the issue of actual notice.  Instead, plaintiffs respond to an argument that Viacom has not even made on a completely different subject – equitable estoppel.  Plaintiffs argue that, under *Nguyen*, plaintiffs are not

*estopped* from disputing contract formation merely because they quote from the app description in their complaint. *See* Opp. at 13. Viacom has not argued that this has created an estoppel. Rather, Viacom has simply pointed to plaintiffs' quotes of the full app descriptions as evidence that Rushing *viewed* those descriptions, which contained specific notices of the EULA and its arbitration provision. *See* Mot. at 5 n.5, 11. When, as here, evidence of actual notice is present – and no contrary evidence is offered – questions of estoppel, like questions of constructive notice, are moot. *See Nguyen*, 763 F.3d at 1176 ("[C]ourts have consistently enforced browsewrap agreements where the user had actual notice of the agreement.").

**B. Even Had There Not Been Actual Notice, Rushing Was on Constructive Notice of the Arbitration Provision.**

Even if actual notice of the binding arbitration agreement had not been demonstrated here, there is more than sufficient evidence of *constructive* notice that would bind plaintiffs to this contract.

Plaintiffs attempt to discern from *Nguyen* a binding, three-factor test that must be satisfied before courts can find constructive notice. *See* Opp. at 6. This reading mischaracterizes *Nguyen*, which simply held that when "there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177; *see also Meyer*, 868 F.3d at 74-75. Contrary to plaintiffs' argument, *Nguyen* did not purport to set forth a binding, three-factor test, and other courts have not interpreted it to have done so. *See, e.g.*, *McKee*, 2017 WL 4685039, at *6 (recognizing that "courts addressing constructive notice in internet commerce have avoided establishing hard and fast rules"); *see also Meyer*, 868 F.3d at 76 (recognizing that under California law "the enforceability of a web-based agreement is clearly a fact-intensive inquiry").

Even if *Nguyen* had established a binding three-part test, it would easily be satisfied here. The EULA was conspicuously made available to Rushing in multiple ways; notice of the agreement (and specifically of its arbitration provision) was provided multiple times in multiple locations; and the general design of the app descriptions and apps themselves was conducive to providing meaningful notice. *See Nguyen*, 763 F.3d at 1177-79.

Rushing received much clearer notice of the terms of the arbitration provision than did the plaintiff in *Nguyen*. In *Nguyen*, the defendant placed a hyperlink labeled "Terms of Use" in the bottom corner of each page of its website. 763 F.3d at 1174. But the website otherwise provided plaintiffs "no reason to suspect they [would] be bound" to those terms. *Id.* at 1179. The website also made no specific reference to the arbitration provision that the defendant was trying to enforce. *Id.* at 1174. Here, by contrast, Rushing was explicitly told that "[u]se of this app is subject to the Nickelodeon End User License Agreement." *See* Ortiz Dec. ¶¶ 8, 11-13. The app description also stated, "[t]he End User License Agreement for this app includes arbitration for disputes." *Id.* ¶ 9. This provided specific notice of the very provision of the EULA that is at issue here. The description also provided instructions for accessing an arbitration FAQ document that provided more information about arbitration. *Id.* And it provided a web address Rushing could use to view the complete set of terms for the EULA. *See id.* ¶ 8.

Plaintiffs' arguments about this language being hidden until a user clicks on "more" after the abbreviated app description (Opp. at 8) are irrelevant. Plaintiffs' own complaint indicates that Rushing did click on "more" (*see* Complaint ¶ 43 & Ex. A, 1-11; *see also* Ortiz Dec. ¶ 13 & Figs. 3 & 4), and plaintiffs have offered no evidence to the contrary. Thus, the relevant question for constructive notice is whether a reasonably prudent consumer who viewed the app description as a whole would have been on constructive notice of the contract and its arbitration provision. Given the explicit references to the agreement – and specifically to arbitration – there was more than ample information provided to put Rushing on *at least* constructive notice that she was committing to arbitration of any dispute she might have about the app.

Other reminders of the EULA and its arbitration provision reinforced the notice already provided to Rushing in the app store. *See* Mot. at 9-10. Plaintiffs claim that the in-app notices through the prominent "Privacy Policy" link on the home screen were insufficient to put a child on constructive notice of the EULA (Opp. at 10-12), but they say nothing about whether the notices were sufficient to put a concerned *parent* on constructive notice. The complaint emphasizes Rushing's heightened interest in her child's privacy, which strongly suggests she would have clicked on the "Privacy Policy" link to read the privacy policy for an app she allowed her child to use. If she did *not* click on that link, she could easily have said so in a declaration. But no such declaration has been offered. There is thus no

evidence to rebut the reasonable inference that Rushing, in clicking on this link, would have seen additional links for the contract and "Arbitration FAQ," *see* Ortiz Decl. ¶¶ 15-16 & Fig. 7, and been put on further notice that a contract and arbitration provision existed.

Moreover, Rushing was provided numerous additional notices of the EULA generally, and the arbitration provision specifically, through other apps. Each time Rushing viewed one of the app descriptions for these apps, and then again when she downloaded and opened the apps themselves, she received additional notice that the EULA was binding and contained an arbitration provision. *See id.* ¶¶ 8-9, 11, 13, 18-20. Although plaintiffs' lawyers assert in their Opposition that Rushing did not download any of the other apps about which she is suing (Opp. at 1 n.1), including apps that provide pop-up notices regarding the binding nature of the EULA and its arbitration provision, they have, once again, conspicuously failed to provide any supporting evidence for this assertion. Nor do they explain how Rushing can be asserting claims relating to those apps if she never even downloaded and used them. In the absence of any contrary evidence, plaintiff is surely bound by an inference that she performed the acts necessary to provide standing for her claims.[6]

None of the cases upon which plaintiffs rely involved the repeated, express notices Viacom provided here. For instance, in *Xytex Corp.*, 2016 WL 3902577, at *4, the court determined that the mere display of the phrases "terms of use" or "Site Usage," without more, does not provide notice "that the linked page contains binding contractual terms."[7] Similarly, in *Norcia*, 2014 WL 4652332, at *6-7, the court found no agreement to arbitrate because (1) the contractual nature of the document was not obvious from its title ("Product Safety & Warranty Information") and (2) the document did not articulate

---

[6] If the Court credits plaintiffs' counsel's unsupported assertion that plaintiffs did not download any of the other apps in the complaint, the Court should dismiss any claims based on those apps, as standing is a necessary prerequisite for subject matter jurisdiction over any such claims. *See Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing.").

[7] *See also Mitchell v. U-Haul Co.*, No. 16-cv-04674-JD, Dkt. No. 40 (N.D. Cal. May 23, 2017) (noting that defendant provided only a link to view defendant's "Terms and Conditions" without any other notices that the terms and conditions would be binding or that they contained an arbitration provision).

how the plaintiff could accept an offer. And in *McKee*, 2017 WL 4685039, at *8, the defendant's display of the terms of service did not make clear that the act of clicking the "Start Now" button would trigger the terms of service and did not mention arbitration at all.[8] In contrast, Viacom's notice makes clear its contractual nature, even calling the relevant document an "End User License *Agreement*" instead of merely "terms of use," notifies users that they will trigger the EULA if they use the app (like the EULA favorably referenced by the court in *Norcia*, *see* 2014 WL 4652332, at *6), and explicitly refers to the arbitration provision. *See* Ortiz Dec. ¶¶ 8-9.

Finally, plaintiffs erroneously contend that constructive notice is defeated because the URL (web address) to the EULA in Apple's Appstore does not hyperlink to the EULA – i.e., when plaintiffs' lawyer clicked on the URL (instead of typing it into his browser) it did not take him directly to the document. *See* Opp. at 8. First, plaintiffs have not shown that the operation of any link in the Apple store is even relevant, as they have submitted no evidence establishing that Rushing downloaded the game on an Apple device. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989-90 (N.D. Cal. 2017) (finding opposition arguments about potential display of terms of service irrelevant when plaintiff did not submit declaration stating that such display occurred on his device). If anything, the unsupported suggestion that Rushing used an Apple device contradicts the complaint, which quotes extensively from the Google Play Store that services Android devices and purports to bring claims on apps that are not even available from the Apple Store. *See* Complaint ¶ 43 & n.7, Ex. A, 1-11 (quoting Google Play Store descriptions); Ortiz Dec. ¶ 7 (identifying apps challenged in the complaint that are not available from Apple). Plaintiffs do not dispute Viacom's evidence that the EULA URL is effectively hyperlinked in the Google Play Store. *See* Ortiz Dec. ¶ 8 ("[W]ithin the Google Play Store, users can click on the URL link to be taken to the EULA."). Nor, for that matter, do they dispute that the URL provided in the Apple store would take the user to the EULA if entered into a browser.

---

[8] *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1073-74 (N.D. Cal. Sept. 8, 2016), which plaintiffs also cite, did not hold that there was no constructive notice. Rather, the court observed that it was "unclear whether the hyperlinked, off-screen terms in the Privacy Policies provided users with constructive notice." The court then went on to discuss an independent ground for denying summary judgment. *Id.* at 1074.

Even if Rushing had used only the Apple store, the lack of a *hyperlink* for the web address provided for the EULA would not be sufficient to overcome the other clear notices plaintiffs received that the EULA contained an arbitration provision. None of the plaintiffs in the cases the opposition cites were explicitly told that the terms of service contained an arbitration provision; in those cases, parties could only know about the arbitration provisions by finding and reading the contracts. Here, by contrast, Viacom made the existence of an arbitration provision abundantly clear without the need to review the full contract. Given this express notice of the relevant contractual term, plaintiffs cannot complain that the they could only have learned of the arbitration provision by performing the additional step of typing a URL into a browser. *See Meyer*, 868 F.3d at 79 ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice.").

### C. Plaintiffs Do Not Dispute That the Arbitration Agreement Delegates Arbitrability Questions to the Arbitrator.

As Viacom explained in its opening memorandum, the arbitration agreement delegates issues of arbitrability to the arbitrator. *See* Mot. at 11-13. Plaintiffs do not dispute this. Their *only* ground for opposing this motion is the asserted lack of contract formation. Accordingly, nothing else remains for this Court to decide.

## III. CONCLUSION

For the foregoing reasons and those reasons stated in Viacom's opening memorandum, *see* Dkt. No. 66, Viacom respectfully requests that the Court enforce Viacom's arbitration agreement with plaintiffs and dismiss or stay plaintiffs' claims against Viacom in this action.

DATED: January 12, 2018

Respectfully submitted,

By: */s/ Kathryn E. Cahoy*
Kathryn E. Cahoy

SONYA D. WINNER (Bar No. 200348)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94102
Telephone: + 1 (415) 591-6000

Facsimile: + 1 (415) 591-6091
Email: swinner@cov.com

EMILY JOHNSON HENN (Bar No. 269482)
KATHRYN E. CAHOY (Bar No. 298777)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065-1418
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email:  ehenn@cov.com
Email:  kcahoy@cov.com

*Attorneys for Defendants Viacom Inc.
and Viacom International Inc.*