UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMANDA RUSHING, et al.,

    Plaintiffs,

v.

VIACOM INC., et al.,

    Defendants.

Case No. 17-cv-04492-JD

**ORDER RE DEFENDANTS' MOTION FOR STAY PENDING ARBITRATION**

Re: Dkt. No. 66

    Viacom seeks an order staying or dismissing the claims of plaintiffs Amanda Rushing and her daughter, L.L., pending arbitration of those claims. Dkt. No. 66. The motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 3. *Id.*

    As the parties' briefing makes clear, the only question before the Court is whether an arbitration agreement was ever formed between the parties. *See also Norcia v. Samsung Telecomms. America, LLC*, No. 14-cv-00582-JD, 2014 WL 4652332, at *4 (N.D. Cal. Sept. 18, 2014) ("'whether a valid agreement to arbitrate exists' is the first question the Court should ask when deciding a motion to compel arbitration brought under the FAA") (citation omitted); *aff'd*, 845 F.3d 1279 (9th Cir. 2017). The answer to that contract formation question turns on the notice plaintiffs received of the arbitration agreement contained in Viacom's End User License Agreement ("EULA") when downloading and playing the game, *Llama Spit Spit*. That is the mobile application at issue, and Viacom has not submitted any evidence that contradicts plaintiffs' representation that plaintiff Rushing downloaded that app for her daughter, L.L., via Apple's App Store. Dkt. No. 68 at 2.

    The EULA, which contains an arbitration clause, states that users agree to be legally bound by it "[b]y installing, accessing and using the Software." Dkt. No. 66 at 2-3. While there is nothing wrong with setting up a contract this way -- such that it is accepted by a user through

1 conduct -- plaintiffs could not have unambiguously manifested assent to the arbitration provision

2 without reasonable notice of the EULA. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173,

3 1175 (9th Cir. 2014). As the party seeking to compel arbitration, it is Viacom's burden to prove

4 "the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v.*

5 *Samsung Telecomms. America, LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citation omitted). It

6 has not met that burden.

**DISCUSSION**

**I. ACTUAL NOTICE**

The only thing Viacom points to as evidence of actual notice is plaintiffs' complaint. Viacom's theory is not that the complaint contains an express allegation that the plaintiffs saw the EULA and its arbitration clause (or even a mobile page that contained references to those things). A statement of that sort in the complaint might very well have been enough to carry the day for Viacom. *See Norcia*, 2014 WL 4652332, at *9 (actual notice argument based on plaintiff's "binding admission in his complaint that he looked at Samsung's website and specifically at Samsung's product web page relating to the S4"; observing that "[f]actual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them") (citation omitted).

Rather, Viacom focuses mainly on the fact that plaintiffs' complaint contains a quote "from the same section of the app description" that also happens to contain notifications that "use of [the] app is subject to the Nickelodeon End User License Agreement" and that "[t]he End User License Agreement for this app includes arbitration for disputes." Dkt. No. 69 at 2-3. This argument might have had some punch if the evidence showed that plaintiffs would necessarily have had to access that same section of the app description in order to download *Llama Spit Spit*. But the undisputed state of the evidence is that the section of the app description in question became visible only when a user clicked on a hyperlink titled "more," and that it was not necessary for a user to click on that "more" hyperlink to "get" the app. Dkt. No. 68, Addendum. In this circumstance, the mere fact that the complaint happens to quote from the same section of the app description that helps Viacom on this motion is not at all sufficient for Viacom to carry its

2

1  burden of proving actual notice by a preponderance of the evidence. Even Viacom's own cases
2  cited in support of the motion support that conclusion. *Cf. James v. Comcast Corp.*, No. 16-cv-
3  02218-EMC, 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016) ("Comcast has provided specific
4  evidence that it included the notice of the 2011 Arbitration Provision with James's July 2011
5  bill."). The possibility that one of plaintiffs' lawyers read and decided to quote from the second
6  page of the app description -- long after plaintiff Rushing downloaded the game -- is entirely too
7  high for this lone fact to bear the weight Viacom tries to place upon it.

## II. CONSTRUCTIVE NOTICE

Nor has Viacom established that it provided sufficient constructive notice of its arbitration clause to plaintiffs. Viacom does not dispute that its arbitration agreement is properly characterized as a "browsewrap agreement." Dkt. No. 69 at 6. Browsewrap agreements do not "require the user to manifest assent to the terms and conditions expressly," and a party "instead gives his [or her] assent simply by using the website." *Nguyen*, 763 F.3d at 1176 (citation omitted). "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Id.* (citation omitted). Where, as here, the proponent of the arbitration agreement has failed to provide sufficient evidence of actual notice, the validity of the browsewrap agreement "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id.* at 1177 (citation omitted). The burden is on website owners to "put users on notice of the terms to which they wish to bind consumers." *Id.* at 1179.

Viacom fails this test. As noted in the discussion of actual notice above, the page of the app description that Viacom relies on -- which references the EULA and its arbitration clause -- was not visible to users unless they clicked on "more," and critically, there was no need for users to click on the "more" button in order to start downloading the game. In situations like these where "users are unlikely to see" the browsewrap agreement at issue, courts have "refused to enforce" them. *Nguyen*, 763 F.3d at 1177 (citing with approval *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002), which "refus[ed] to enforce terms of use that 'would have become visible to plaintiffs only if they had scrolled down to the next screen'").

3

Viacom does not point to any kind of textual notice on "every page" that "continuing past this page and/or using this site" constitutes acceptance of the EULA. *Nguyen*, 763 F.3d at 1177. It is undisputed that a child "can immediately begin playing *Llama Spit Spit* without clicking any of the various hyperlinks on the screen, and the child is not presented with any notification of the existence of 'terms of service.'" Dkt. No. 68 at 3. "Nor is there any indication that by continuing to play, the child is agreeing to an unreferenced set of terms." *Id*. The parties do agree that there was a "Privacy Policy" link on the home screen of the app, which a child presumably would have encountered each time he or she launched the game, Dkt. No. 69 at 7, Dkt. No. 68 at 3, but that is a far cry from "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound" by the EULA. *Nguyen*, 763 F.3d at 1177.

## CONCLUSION

Arbitration is a matter of contract, and there can be no contract without an offer and an acceptance. A user cannot accept an offer through silence and inaction where she could not reasonably have known that an offer was ever made to her. That is the situation here, and consequently Viacom's motion is denied.

**IT IS SO ORDERED.**

Dated: October 15, 2018

JAMES DONATO
United States District Judge