**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Kathryn Cahoy

Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
T  +1 650 632 4735
kcahoy@cov.com

**Re: *Rushing v. Viacom Inc., et al.*, 3:17-cv-4492-JD**          November 20, 2019

Dear Judge Donato:

      Plaintiff Amanda Rushing ("Plaintiff") premises her suit on her purportedly comprehensive forensic analyses that allegedly show improper collection and use of her child's data in Viacom's Llama Spit Spit app – a contention that Viacom, Unity, and Upsight (collectively, "Defendants") strongly deny.  After using her forensic analyses as a sword to plead her case and survive a motion to dismiss, Plaintiff now refuses to produce them in discovery.  She hides behind the shield of the work product doctrine, claiming that the analyses are protected because they were generated by a consulting expert.  Plaintiff has waived any protection over these analyses by putting them at issue in her pleadings.  Defendants therefore request that the Court order Plaintiff to (1) produce the forensic analyses relied on in her Complaint, Amended Complaint, and motion to dismiss oppositions, and (2) answer Defendants' interrogatories regarding the methodology and results of those analyses.  *See* Exs. A-G (discovery request and response excerpts).[1]  Defendants certify that they met and conferred with Plaintiff on November 11, 2019, pursuant to the Court's Standing Order and Local Rules.

**I.   Plaintiff Cannot Use the Work Product Doctrine As a Sword and a Shield.**

      When, as here, a plaintiff expressly relies on a consulting expert's work product in her pleadings, she waives any protections that otherwise may have shielded disclosure of that material.  Although a party's trial preparation material, including that generated by a consulting expert, is generally protected from disclosure, *see, e.g.*, Fed. R. Civ. P. 26(b)(4)(D), that protection "is rooted in fairness," and parties cannot use it "as both a sword and a shield." *Worley v. Avanquest N. Am. Inc.*, 2013 WL 6576732, at *5 (N.D. Cal. Dec. 13, 2013).

      Accordingly, courts routinely order the production of test results and methodology when a plaintiff puts them at issue in pleadings.  For example, in *Zeiger v. WellPet LLC*, the complaint described lab tests that purportedly revealed the presence of toxins in the defendant's products. *See* 2018 U.S. Dist. LEXIS 63019, at *2-3 (N.D. Cal. Apr. 10, 2018).  The tests were "central to plaintiffs'" allegations and "important to [the court's] decision denying" the defendant's motion to dismiss.  *Id.* at *3. The court therefore rejected the plaintiffs' claims that Rule 26(b)(4)(D) protected those tests from disclosure and ordered their production.  *Id.* at *6-8.  The court explained that "[b]y injecting the lab results into the litigation in connection with a dispositive motion, [plaintiffs] have affirmatively used these materials against [defendant] and cannot now claim the expert consulting privilege to shield these same materials from discovery." *Id.* at *7.

---

[1]  Defendants in the related actions have served similar document requests and interrogatories on the plaintiffs in those cases.

COVINGTON

November 20, 2019
Page 2

   Similarly, in *Worley*, the court held that the plaintiff could not hide behind Rule 26(b)(4)(D) to avoid disclosure of its computer forensic expert's analysis. 2013 WL 6576732, at *5. In contrast to the "conventional instance" in which an expert "merely provides behind-the-scenes assistance to a party with respect to litigation," the plaintiff had put the expert analysis at issue by alleging in the complaint what that "expert's investigation uncovered." *Id.* at *4. When an expert "supplie[s] statements, findings, or opinions explicitly relied upon by a party in a pleading or motion," the opposing party is entitled to discovery, including interrogatory responses, regarding the methodology and results of the analyses at issue. *Id.* at *5.[2]

   Plaintiff too should be ordered to produce her forensic analyses and to describe the methodology underlying them because she has injected those analyses into the litigation in multiple pleadings. Starting with her original Complaint, Plaintiff relied on these analyses as the basis for her claims. She asserted that "[a]nalytics and network analysis tools have detected the persistent identifiers that each Game Tracking App accessed in real time." Compl. ¶ 40. She also referenced "[e]xtensive analysis" as to "each of Viacom's Game Tracking Apps and as to each SDK Defendant" that allegedly resulted in "substantial evidence that each of these child-directed apps collects and uses children's persistent identifiers." *Id.* ¶ 41.

   Plaintiff then relied on so-called "forensic testing" in her Amended Complaint, claiming to have evidence that Defendants "exfiltrate Llama Spit Spit users' Personal Data for tracking, profiling, and targeting purposes." Am. Compl. ¶¶ 32, 37, 41, 52; *see also id.* ¶¶ 17-54; *id.* ¶ 29 & n.7 (referencing analyses regarding "exfiltration and use of" advertising IDs to "serve [users] with tailored and targeted advertising and otherwise monetize the Personal Data").

   In their motion to dismiss, Defendants pointed out the flimsiness of Plaintiff's allegation of improper use of Plaintiff's data. In response, Plaintiff relied on her forensic analyses to avoid dismissal. *See, e.g.*, ECF No. 214, at 1 (arguing that Plaintiff's "allegations are based on comprehensive forensic testing demonstrating that Defendants' Apps exfiltrate Personal Data sufficient to identify and target individual children"). Based on these representations, the Court allowed Plaintiff's claims to survive. *See* ECF No. 270, at 14 (describing complaint as "detailed and lengthy" and finding that it "adequately allege[d] that the collected data was used to serve plaintiffs with targeted advertising while using the apps").

   When, as here, a plaintiff repeatedly cites and relies on consulting expert analyses in her complaints and motion to dismiss oppositions, she cannot avoid production of those analyses in discovery. *Zeiger*, 2018 U.S. Dist. LEXIS 63019, at *6-8; *Worley*, 2013 WL 6576732, at *4-5.

---

[2]  *See also Song v. Drenberg*, 2019 WL 5095744, at *4 (N.D. Cal. Oct. 11, 2019) (finding that documents "do not qualify for attorney work product protection because they constitute the underlying evidence on which [plaintiff] relies in his three complaints"); *In re iPhone/iPad App. Consumer Privacy Litig.*, 2012 WL 5897351, at *8 (N.D. Cal. Nov. 21, 2012) (granting deposition of consulting expert whose "findings were the product of an investigation with the goal of initiating this suit" when "those findings were incorporated into the complaint"); *Huerta v. Bioscrip Pharm. Servs., Inc.*, 2010 WL 11523747, at *2 (D.N.M. Mar. 17, 2010) (granting discovery of expert test results when complaint allegedly was "verified by [plaintiff's] testing").

**PUBLIC - REDACTED VERSION**

COVINGTON

November 20, 2019
Page 3

      Plaintiff's refusal to produce documents and information pertaining to the forensic analyses is particularly problematic here given the absence of any other basis for her allegations of misconduct by Defendants. Plaintiff's core theory of the case – and the one on which the Court relied in allowing her claims to survive – is that Defendants harvested her child's data to serve behavioral advertisements to her child and other Llama Spit Spit users. *See* ECF No. 270, at 4, 14. Plaintiff has repeatedly claimed that forensic analyses support this allegation. *See supra* at 2. But there are no third-party advertisements in Llama Spit Spit, let alone behavioral or targeted advertisements. Indeed, ████████████████████████████████████████████████████████████████████████████ Given the lack of any other evidence to support Plaintiff's allegations of behavioral advertising, it is particularly important that Defendants receive the analyses Plaintiff relied on in filing and defending the adequacy of her complaints. *Cf.* Note, Fed. R. of Evid. 502(a) ("[A] party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation.").

      Finally, Defendants' inability to replicate Plaintiff's forensic analyses presents an independent reason to order her to produce her analyses and answer interrogatories regarding her methodology and results. Defendants are not in possession of the devices on which the analyses were performed, and Plaintiff has refused to date to produce basic information about her devices, including applicable settings and other apps downloaded on them. As a result, Defendants are left to guess at the background conditions for any analyses Plaintiff performed and are unable to replicate them. This presents an additional reason to order production of her analyses. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii), 26(b)(4)(D)(ii); *Erhart v. BofI Holding, Inc.*, 2018 WL 4204928, at *3 (S.D. Cal. Sept. 4, 2018) (noting that "common examples" of work product subject to discovery include "'test results that cannot be duplicated'").

## II.    Plaintiff Rejected Defendants' Good-Faith Efforts To Compromise.

      Viacom served its requests for production on July 31, 2019, followed by Upsight, and then Unity on September 6, 2019. In response, Plaintiff has produced only 68 documents, nearly all of which are taken from public websites and none of which include the requested forensic analyses. Defendants have made near-weekly requests for production of the forensic analyses since July. At first, Plaintiff stalled and delayed the analyses' production, which itself was inexcusable given the fact that Plaintiff's counsel presumably has had this material in their possession since before this suit was filed. Then counsel revealed on an October 16 call that Plaintiff would refuse to provide the material altogether based on a work product claim.

      Subsequent meet-and-confer efforts have been unsuccessful. Plaintiff has refused to agree to any compromise unless Defendants waive in advance their rights to challenge the adequacy of whatever production Plaintiff chooses to make and to seek further discovery regarding the analyses. Plaintiff's insistence that Defendants waive rights to further discovery before even seeing what Plaintiff produces is not reasonable, especially when Plaintiff has refused to provide any information regarding the material she is withholding pursuant to her purported claim of work product protection. Defendants therefore request an order requiring Plaintiff to (1) produce the forensic analyses referenced in her Complaint, Amended Complaint, and opposition to Defendants' motions to dismiss, and (2) answer Defendants' interrogatories regarding the methodology and results of those analyses.

**COVINGTON**

November 20, 2019
Page 4

      Sincerely,

      /s/ *Kathryn E. Cahoy*

Kathryn Cahoy

COVINGTON & BURLING LLP

*Counsel for Defendants Viacom Inc. and Viacom International Inc.*

      /s/ *Amy M. Smith*

Amy M. Smith

COOLEY LLP

*Counsel for Defendant Upsight Inc.*

      /s/ *Rommy L. Flores*

Rommy L. Flores

MORRISON & FOERSTER LLP

*Counsel for Defendant Unity Technologies SF*

**COVINGTON**

November 20, 2019
Page 5

## ATTESTATION REGARDING SIGNATURES

  Pursuant to Local Rule 5-1(i)(3), I attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's contents and have authorized the filing.


DATED: November 20, 2019             By: _s/ Kathryn E. Cahoy_